IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT BRUMETT,<br><br>    Petitioner,<br><br>  v.<br><br>ANTHONY P. KANE,<br><br>    Respondent.<br>_____/ | No. C 04-05423 JSW<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS** |

This matter comes before the Court on consideration of Respondent Anthony P. Kane's ("Respondent") motion to dismiss the petition for writ of habeas corpus filed by Petitioner Scott Brumett ("Petitioner"). Having carefully reviewed the parties' papers and the relevant authority, the Court hereby GRANTS Respondent's motion to dismiss.

**BACKGROUND**

On July 5, 2005, Petitioner filed a First Amended Petition ("FAP") for writ of habeas corpus seeking to compel California's Board of Prison Terms ("Board") to conduct a parole consideration hearing and order him released from prison. The Board denied parole once following Petitioner's conviction for second-degree murder. (FAP at 5.) Respondent moves to dismiss the FAP on two grounds.[1]  First, Respondent argues that Petitioner has no federally protected liberty interest in parole and thus does not allege a federal question. Second,

---

[1] Respondent also argues that any equal protection claim and contract claim brought by Petitioner should be dismissed. Petitioner concedes in his Opposition Brief that the FAP's reference to the Equal Protection Clause was made in error and is not relevant to Petitioner's case. Petitioner concedes in his response to the Order to Show Cause that he is not bringing a contract claim in this petition. Any reference to equal protection claims and contract claims in the FAP is accordingly stricken.

1 Respondent argues that Petitioner has not exhausted all of his state judicial remedies. Petitioner
2 has requested that the Court hold the petition in abeyance pending the exhaustion of his state
3 judicial remedies if this Court finds Petitioner has failed to exhaust.

**ANALYSIS**

**A.  Petitioner Has a Federally Protected Liberty Interest in Parole.**

In general, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987); *Greenholtz*, 442 U.S. at 12).

The California statutory provision at issue provides, in pertinent part, that "[t]he panel or the board, sitting en banc, *shall* set a release date *unless* it determines that the gravity of the current convicted offense or offenses . . . is such that consideration of the public safety requires a more lengthy period of incarceration for this individual and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b) (emphasis added). This "shall-unless" language is similar to the statutes that were at issue in *Allen* and *Greenholtz*. *See Allen*, 482 U.S. at 376 ("*Subject to the following restrictions*, the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or the community.") (quoting Mont. Code Ann. § 46-23-201 (1985) (emphasis added and in original); *Greenholtz*, 442 U.S. at 11 ("[w]henever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred . . . .") (quoting Neb. Rev. Stat. § 83-1,114(1) (1976)) (emphasis added).

Recognizing the similarity between California's statutory scheme and the statutory scheme at issue in *Allen* and *Greenholtz*, the Ninth Circuit has held that "California's parole

2

1  scheme gives rise to a cognizable liberty interest in release on parole. The scheme creates a
2  presumption that parole release will be granted unless the statutorily defined determinations are
3  made." *McQuillion*, 306 F.3d at 902 (internal quotations and citations omitted). That court
4  reiterated its holding in *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) ("[I]t is clear that
5  'California's parole scheme gives rise to a cognizable liberty interest in release on parole.'")
6  (quoting *McQuillion*, 306 F.3d at 902).

7  Respondent contends that the California Supreme Court's decision in *In re Dannenberg*,
8  34 Cal. 4th 1061 (2005), undermines the Ninth Circuit's holdings in *Biggs* and *McQuillion*, and
9  Respondent relies in part on *Sass v. California Board of Prison Terms*, 376 F. Supp. 2d 975
10 (E.D. Cal. 2005), in support of this argument. This Court disagrees with the *Sass* court's
11 conclusion that the holding in *Dannenberg* clearly demonstrates California's parole scheme is
12 not mandatory. The issue presented in *Dannenberg* was whether the Board was required to set
13 uniform parole dates under Section 3041(a) before it determined whether a particular inmate
14 was suitable for parole under 3041(b). *See Dannenberg*, 34 Cal. 4th at 1069, 1077. It
15 concluded the answer to that question was no. *Id.* at 1096. However, the *Dannenberg* Court
16 used language throughout the opinion which suggests that it presumed an inmate retained a
17 protected liberty interest in the possibility of parole. *See, e.g.*, *id.* at 1094 (noting continued
18 reliance on commitment offense "might thus also contravene the inmate's constitutionally
19 protected expectation of parole"), 1095 n.16 ("well established principles" regarding parole
20 discretion with deferential judicial oversight "define and limit the *expectancy* in parole from a
21 life sentence *to which due process interests attach*") (emphasis added). Furthermore, California
22 courts addressing the issue following *Dannenberg* continue to assume a protected liberty
23 interest exists. *See In re Scott*, 133 Cal. App. 4th 573 (2005); *In re DeLuna*, 126 Cal. App. 4th
24 585 (2005).

25 Accordingly, this Court finds itself in agreement with a majority of courts that have
26 considered the impact of *Dannenberg* on this issue and cannot find that the *Dannenberg* opinion
27 represents a clear holding that California's parole scheme is not mandatory. *See, e.g.*,
28 *Blankenship v. Kane*, No. C 04-5450, 2006 WL 515627, at *3 (N.D. Cal. Feb. 28, 2006) (citing

3

1  cases). Accordingly, under the holdings of *McQuillion* and *Biggs*, Petitioner has a federally

2  protected liberty interest in parole, and thus, this Court has jurisdiction over this matter.

3  Accordingly, Respondent's motion is denied on this basis.

### B. Petitioner Has Not Exhausted All State Judicial Remedies.

Respondent argues that Petitioner failed to exhaust his claim that the Board's decision to deny parole violates the "*Apprendi-Blakely* doctrine" because the Board's decision was based upon facts not found by a jury.[2] Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). Requiring exhaustion of claims provides state courts with "the first opportunity to correct federal constitutional errors and minimizes federal interference and disruption of state judicial proceedings." *Id.* at 514. If the petition combines exhausted and unexhausted claims, the district court must dismiss the entire habeas petition without reaching the merits of any of its claims. *Guizar v. Estelle*, 843 F.2d 371, 372 (9th Cir. 1988).

The exhaustion requirement is satisfied only if the federal claim (1) has been "fairly presented" to the state courts, *see Picard v. Connor*, 404 U.S. 270, 275 (1971); *Crotts v. Smith*, 73 F.3d 861, 865 (9th Cir. 1996) *overruled on other grounds by* 28 U.S.C. § 2244, or (2) no state remedy remains available, *see Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). To fairly present a federal claim to the state court, a petitioner must "include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard*, 404 U.S. at 271). A petitioner must make more than "a general appeal" to a broad constitutional guarantee. *Gray*,

---

[2] Petitioner derives the "*Apprendi-Blakely* doctrine" from *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). These cases establish, in the context of sentencing, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *see also Blakely*, 542 U.S. at 301.

4

518 U.S. at 163. Specific reference to the federal constitution and citations to federal authority discussing the constitutional provision sufficiently alert the state courts to the federal nature of a petitioner's claim. *See, e.g.*, *Caswell v. Calderon*, 363 F.3d 832, 838 (9th Cir. 2004).

Petitioner argues that he exhausted his claim regarding the *Apprendi-Blakely* doctrine by discussing the circumstances of the Board's denial of his parole and why his due process rights were violated. (Opp. at 11.) In his petition before the California Supreme Court, Petitioner did not apply the holdings of *Apprendi* or *Blakely* to the facts or even to cite these cases when addressing his alleged due process violations. Petitioner's general invocation of "due process" in his petition to the California Supreme Court was insufficient to exhaust his claim based on the *Apprendi-Blakely* doctrine. *See Gray*, 518 U.S. at 163 (noting that "mak[ing] a general appeal to a constitutional guarantee as broad as due process" was insufficient to exhaust).

Alternatively, Petitioner argues that he exhausted "by incorporating by reference the lengthy petition filed in the court of appeals." (Opp. at 11.) However, California Rules of Court provides that:

> [n]o incorporation by reference is permitted except a reference to a petition, an answer, or a reply *filed by another party* in the same case or filed in a case that raises the same or similar issues and in which a petition for review is pending or has been granted.

Cal. R. Ct. 28.1(e)(2) (emphasis added). The plain language of California Rule of Court 28.1 explicitly precludes incorporation by reference by a party from his or her own pleading. *Cf. Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document)").

Petitioner argues that even if he were not allowed to incorporate arguments by reference, the court of appeal petition was attached to his supreme court petition, and that such attachment was sufficient to present the arguments within it to the state supreme court.[3] The California Rules of Court state that "[n]o attachments [to a habeas petition] are permitted *except an*

---

[3] The Court notes that no copy of Petitioner's submission to the California Court of Appeal is present in the record of his federal habeas appeal. Without this filing, the Court cannot determine whether Petitioner's *Apprendi-Blakely* claim was presented to the California Court of Appeal. Regardless, Petitioner failed to exhaust his claim by attaching the court of appeal petition to his supreme court petition.

5

*opinion or order* from which the party seeks relief *and exhibits or orders* of a trial court or Court of Appeal that the party considers unusually significant . . . ." Cal. R. Ct. 28(e)(1) (emphasis added). Thus, the habeas petition from the court of appeal may not be attached to Petitioner's supreme court submission. Petitioner may not rely on his attachment of the court of appeal petition to demonstrate that he fairly presented his *Apprendi-Blakely* claim to the California Supreme Court.

Accordingly, the Court finds Petitioner failed to exhaust his state court remedies and grants Respondent's motion to dismiss on this ground.

**C.     Petitioner Has Not Established That a Stay is Warranted.**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations to file a petition for a federal writ of habeas corpus concerning a state court judgment. 28 U.S.C. § 2244(d)(1). However, exhaustion of all state remedies is a prerequisite to the petition. 28 U.S.C. § 2254(b)(1); *Rose*, 455 U.S. at 510. The interplay of these two requirements created a problem for petitioners filing mixed petitions because the statute of limitations often precluded petitioners from obtaining federal review of the unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005).

In *Rhines*, the Supreme Court resolved this problem by approving a procedure whereby a district court, in its discretion, could "stay [a] petition and hold it in abeyance while [a] petitioner returns to state court to exhaust his previously unexhausted claims." *Id*. However, because a stay and abeyance has the potential to frustrate AEDPA's dual purposes of encouraging finality of state court judgments and creating incentives for petitioners to seek relief in state court first, the Supreme Court also stated that the "stay and abeyance should be available only in limited circumstances." *Id*. at 277-78.

Thus, under *Rhines*, the stay and abeyance of a mixed petition is appropriate when the district court determines: (1) "there was good cause for petitioner's failure to exhaust his claims in state court;" (2) the unexhausted claims are not "plainly meritless;" and (3) "reasonable time limits are placed on a petitioner's trip to state court and back." *Id*.

6

1  District courts within the Ninth Circuit have found "good cause" to require at a
2  minimum a showing of some "circumstance over which [petitioner] had little or no control" that
3  prevented the petitioner from asserting the unexhausted claim in the state courts. *Ringer v.*
4  *Crawford*, 415 F. Supp. 2d 1207, 1211 (E.D. Nev. 2006); *see also Hernandez v. Sullivan*, 397 F.
5  Supp. 2d 1205, 1207 (C.D. Cal. 2005) (adopting the "good cause" standard of procedural
6  defaults in which "a petitioner ordinarily must show that the default resulted from an objective
7  factor external to the petitioner which cannot fairly be attributed to him.").

8  The Supreme Court decided *Apprendi* June 26, 2000. The Supreme Court decided
9  *Blakely* on June 24, 2004. Petitioner filed his petition with the California Supreme Court on
10 September 20, 2004. Nevertheless, Petitioner argues that good cause exists because "the ink
11 was barely wet on the *Blakely* decision." (Petitioner's Response to Order to Show Cause at 3.)
12 Petitioner further argues that it was not clear that the holdings of *Apprendi* and *Blakely* were
13 applicable to parole decisions until the California Supreme Court opinion in *Dannenberg*, 34
14 Cal. 4th at 1078, 1080. *Dannenberg* does not address *Apprendi* or *Blakely*, or restrict the Board
15 from considering facts that were not determined by a jury. In fact, the court in *Dannenberg*
16 specifically references statutes that *require* the Board to consider statements and
17 recommendations submitted by local officials connected to the inmate's conviction, including
18 the judge, and statements by the victims or next of kin regarding their views of the crime and of
19 the inmate. *Id.* at 1084. Accordingly, the Court finds that Petitioner has not demonstrated good
20 cause for his failure to exhaust.

21 Moreover, even assuming *arguendo* that Petitioner did demonstrate good cause, the
22 Court finds that Petitioner's claim based on the *Apprendi-Blakely* doctrine is plainly meritless.
23 *Apprendi* and *Blakely* address the ability of a judge to increase a maximum sentence based on
24 facts that are not found by a jury or stipulated to by the defendant. *See Apprendi*, 530 U.S. at
25 490 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty
26 for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved
27 beyond a reasonable doubt") (emphasis added); *Blakely*, 542 U.S. at 303 (noting that "the
28 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose

7

1  solely on the basis of the facts reflected in the jury verdict to admitted by the defendant")
2  (emphasis omitted).  Here, Petitioner was already sentenced to fifteen years to life.  Thus, his
3  maximum sentence is life.  By determining whether or not to grant parole, the Board is not
4  increasing his penalty beyond the statutory maximum.  *Apprendi* and *Blakely* are inapposite to
5  Petitioner's challenge to the Board's parole determination.

6      The Court therefore declines to exercise its discretion to stay the petition and hold it in
7  abeyance while Petitioner returns to state court to exhaust his claim.  *See Rhines*, 544 U.S. at
8  275 (2005).

## CONCLUSION

In accordance with the foregoing reasons, the Court hereby GRANTS Respondent's motion to dismiss.  This ruling is without prejudice to filing an amended petition containing only Petitioner's exhausted claims.  In the alternative, Petitioner may request dismissal of the entire petition without prejudice and complete exhaustion of his unexhausted claim in state court.  He can then file a new federal petition presenting all of his claims, assuming that the petition would not be barred by the statute of limitations.  *See* 28 U.S.C. § 2244(d).  Petitioner must file and serve no later than thirty days from the date of this order a notice in which he states whether he elects either to (1) dismiss the unexhausted claim and file an amended petition with only the remaining exhausted claims; or (2) terminate this action and return to state court to complete the exhaustion of all of his claims before returning to federal court to present his claims in a new petition.  If Petitioner fails to comply with this order, this action will be dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: September 27, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE